NEIMAN–MARCUS CO. v. CITY OF HOUSTON et al.

No. 10395.

Court of Civil Appeals of Texas. Galveston.

Aug. 21, 1937.

Rehearing Denied Oct. 14, 1937.

Baker Botts Andrews & Wharton, J. C. Hutcheson, III, and Gains G. Gannon, all of Houston, for plaintiff in error.

R. R. Lewis and Fulbright, Crooker & Freeman, all of Houston (C. A. Perlitz, Jr., and C. A. Leddy, both of Houston, of counsel), for defendants in error.

PLEASANTS, Chief Justice.

For convenience and brevity the parties will be hereinafter designated as plaintiff and defendants.

The following statement of the nature and result of the suit is in substance the statement contained in plaintiff's brief supplemented by statement in the brief of defendants:

Neiman-Marcus Company, a corporation, brought this suit against the City of Houston, its mayor and commissioners, and George A. Woods, director of public health and safety of the City of Houston. The object of the suit was to restrain the enforcement against the plaintiff, its agents and employees, of a certain police ordinance of the City of Houston regulatory of itinerant vendors. A prayer for equitable relief by way of injunction was predicated on the claim that the enforcement of the ordinance, which was alleged to be unconstitutional and void, illegally deprived plaintiff of valuable civil and vested property rights. It was alleged that the plaintiff, Neiman-Marcus Company, in the past had engaged, and in the future desired to engage, from time to time within the City of Houston in the conduct of its business of selling ladies' ready-to-wear in such manner as to subject it to the terms and provisions of the ordinance above referred to; that Neiman-Marcus Company enjoyed an established good will in the City of Houston as a merchant, which was a vested property right; that as aforesaid the ordinance complained of was illegal and void under the Constitutions of both the United States and of the State of Texas, and that its enforcement operated to deprive plaintiff of its property without due process of law and contrary to the due course of the law of the land. The ordinance was further alleged to work an unreasonable discrimination against plaintiff in favor of other itinerant vendors of the same class as plaintiff, so as to deny plaintiff equal protection of law, and as

well due process of law and due course of the law of the land. There were appropriate allegations to support the prayer for equitable relief.

The ordinance complained of by plaintiff, and which will be hereinafter set out, was duly passed by the city council of defendant City of Houston on January 4, 1933.

In October, 1933, plaintiff company joined by some of its employees filed suit in the Fifty-Fifth district court of Harris County attacking the constitutionality of the ordinance upon the grounds above set out in the proceedings now before us, and seeking the same relief now prayed for. The defendants presented a general demurrer to the petition then before the court. After hearing argument for several days by the attorneys of the respective parties, Judge Boyd sustained the general demurrer. Thereafter plaintiffs asked leave to amend their petition and, upon such leave being given, plaintiffs then asked leave to take a nonsuit, which was also granted.

After such suit had been thus dismissed, the attorneys representing the plaintiff filed a suit attacking the constitutionality of the ordinance in the United States District Court for the Southern District of Texas, Houston Division. While such suit was pending, it appeared that the court did not have jurisdiction thereof, and it was accordingly dismissed at the cost of the plaintiff. The plaintiff herein thereupon filed the instant suit in the district court of Harris County, Tex., which attacks the ordinance on practically the same grounds as had theretofore been alleged in the prior suit heard before Judge Boyd.

The trial in the court below with a jury resulted in a verdict and judgment in favor of defendants, the jury having been instructed by the court to render such verdict. Pending the appeal the trial court on motion of plaintiff for a temporary injunction pendente lite made the following order:

It is, therefore, ordered, adjudged, and decreed by the court on this the 15th day of September, A.D.1934, that the general demurrer of the defendants, and each of them, to the petition of the plaintiff be, and the same is hereby, in all things overruled and denied, to which action of the court in so overruling the general demurrer of the defendants, and each of them, the defendants and each of them, then and

there in open court excepted. Thereupon the court announced that he was of the opinion that plaintiff was entitled to the temporary relief prayed for by it upon giving a statutory injunction bond in the sum of $100, and upon the following additional conditions:

(1) That Neiman-Marcus Company first deposit in the registry of the court the sum of $100, this amount to remain in the registry of the court subject to the further orders of the court, to be returned to plaintiff if the ordinance involved in this case shall eventually be declared invalid but, if the ordinance is eventually upheld, to be used to pay the City of Houston the license fees which the said City of Houston will be entitled to under the ordinance involved herein, on account of any business transacted by Neiman-Marcus Company as an itinerant vendor in the City of Houston under the protection of the injunction of this court during the pendency of this case.

(2) That Neiman-Marcus Company make and file with the clerk of this court the bond required by the ordinance involved herein for the use and benefit of any person or persons who may sustain damage caused by or arising from or growing out of the wrongful, fraudulent, or illegal conduct of plaintiff while engaging as an itinerant vendor within the meaning of the ordinance of the City of Houston involved herein. This bond shall be in a sum of not less than $2,000 and shall be executed by plaintiff as principal with either two or more good and sufficient personal sureties satisfactory to the clerk of the court, or with a solvent surety company authorized to do business in Texas.

(3) Compliance with the foregoing conditions shall entitle Neiman-Marcus Company to show for one continuous period beginning any time in the month of September, 1934.

As conditions precedent to the injunctive relief hereinafter ordered in connection with any additional showings other than one continuous showing to commence some time within the month of September, 1934, the plaintiff shall:

(1) Deposit with the Clerk in the registry of this court an additional $50.00.

(2) File an additional bond in the sum of not less than $2,000, conditioned as and with the sureties or surety above provided.

(3) Notify the City of Houston by notifying its attorneys of record herein at least ten days prior to the date of any contemplated sale or exhibit to be held in the City of Houston. This notice must be accompanied by a statement showing the kind and character of the goods or merchandise to be offered for sale or exhibited by plaintiff.

It is, therefore, ordered, adjudged, and decreed by the court that upon plaintiff, Neiman-Marcus Company, filing herein a statutory injunction bond in the sum of $100, and upon complying with the foregoing conditions, and each of them, that the defendants, and each of them, their agents, servants, and employees, be restrained and enjoined during the pendency of this suit from prosecuting or instituting prosecutions against the plaintiff, its agents, servants, and employees, and from arresting or otherwise molesting plaintiff, its agents, servants, and employees, under color of the ordinance attacked in this case.

The ordinance complained of by plaintiff is in substance as follows:

Be it ordained by the city council of the City of Houston, Tex.:

Section 1. Definitions: The term "Itinerant Vendor" means and includes and shall be construed to mean and include all persons, firms, and corporations, as well as their agents and employees, who engaged in the temporary or transient business in the City of Houston, Tex., of selling, or offering for sale, any goods, or merchandise, or exhibiting the same for sale or exhibiting the same for the purpose of taking orders for sale thereof; and who for the purpose of carrying on such business or conducting such exhibits thereof either hire, rent, lease, or occupy any room or space in any building, structure, or other enclosure in said City of Houston, in, through, or from which any goods or merchandise may be sold, offered for sale, exhibited for sale, or exhibited for the purpose of taking orders for the sale thereof. The word "temporary" as used above means and shall be construed to mean any such business transacted or conducted in the City of Houston for which definite arrangements have not been made for the hire, rental, or lease of premises for at least one month in or upon which such business is to be operated or conducted. The word "transient" as used above means, and shall be construed to mean, any such

business of any such itinerant vendor as may be operated or conducted by persons, firms, or corporations, or by their agents or employees who reside away from the City of Houston, or who have fixed places of business in places other than the City of Houston, or who have their headquarters in places other than the City of Houston, or who move stocks of goods or merchandise or samples thereof into Houston with the purpose or intention of removing them or the unsold portion thereof away from said City of Houston before the expiration of one month.

Section 2. Itinerant vendor must have license:

Provisions: It shall hereafter be unlawful for any itinerant vendor to sell, offer for sale, exhibit for sale, or exhibit for the purpose of taking orders for the sale thereof, any goods or merchandise in the City of Houston, without first obtaining a license permit as herein provided for. The assessor and collector of taxes of the City of Houston shall issue to any itinerant vendor a license permit authorizing such itinerant vendor to sell, exhibit for sale, offer for sale, or exhibit for the purpose of taking orders for the sale thereof, in the City of Houston, his goods or merchandise only after such itinerant vendor shall have fully complied with all provisions of this ordinance and made payment of the sum of $50 for said permit license, and which sum shall be compensation to the City of Houston for the services herein required of it and to enable the City of Houston to partially defray the expenses of enforcing the provisions of this ordinance; provided:

(a) The itinerant vendor shall make application to the assessor and collector of taxes at least ten days prior to the date of his contemplated sale or exhibit to be held in the City of Houston, which application shall be in the form of an affidavit stating the full name and address of the itinerant vendor, the location of his or its principal office, and place of business, the names and addresses of its officers if it be a corporation, and the partnership name and the names and addresses of all partners if such itinerant vendor be a firm.

(b) Before said license permit shall issue, the application therefor must be accompanied by:

(1) A statement showing the kind and character of the goods or merchandise to be sold, offered for sale, or exhibited.

(2) A certified copy of the charter if the itinerant vendor be a corporation incorporated under the laws of the State of Texas.

(3) A certified copy of its permit to do business in Texas if the itinerant vendor be a corporation incorporated under the laws of some state other than Texas.

(4) A bond in a sum of not less than $2,000, and it shall be executed by the itinerant vendor as principal with two or more good and sufficient sureties satisfactory to the assessor and collector of taxes, which bond shall be payable to the mayor of the City of Houston and his successors in office for the use and benefit of any person or persons entitled thereto and conditioned that the principal and surety will pay all damages to person or persons caused by, or arising from, or growing out of, the wrongful, fraudulent, or illegal conduct of the itinerant vendor while conducting the sale or exhibit in the City of Houston. The bond shall remain in full force and effect for the entire duration of the license permit as provided herein and two years thereafter.

Section 3. License not transferable: The license permit provided for herein shall not be transferable nor give authority to more than one person to sell or exhibit goods or merchandise as an itinerant vendor, either by agent or clerk or in any other way than his own proper person, but any person having obtained such license permit may have the assistance of one or more persons in conducting the sale or exhibit, who shall have authority to aid the principal, but not to act for or without him.

Section 4. Duration of license: The license as provided herein shall continue so long as such sale or exhibit is continuously held in the City of Houston, but in no event shall it continue for more than forty days from the date of its issuance. Such license permit shall be prominently displayed in a conspicuous place on the premises where such sale or exhibit is being conducted and shall remain so displayed so long as any goods or merchandise are being so sold or exhibited.

Section 5. Exemption: This ordinance is not, and shall not be held to be, applicable to the (a) ordinary commercial traveler who sells or exhibits for sale goods or merchandise to parties engaged in the business of buying and selling and dealing in such goods or merchandise; (b) vendors of farm produce, poultry, stock, or agricultural products in their natural state;

(c) sales of goods or merchandise donated by the owners thereof, the proceeds whereof to be applied to any charitable or philanthropic purpose.

Section 6. Penalty: Any person violating any of the provisions of this ordinance shall upon conviction be fined not less than $50 nor more than $200, and each sale, offer for sale, exhibition for purpose of sale, or exhibition for the purpose of taking orders for the sale thereof shall be a separate offense.

Section 7. Saving clause: In the event any section, subsection, sentence, clause, or phrase of this ordinance shall be declared or adjudged invalid or unconstitutional, such adjudication shall in no manner affect any other sections, subsections, sentences, clauses or phrases of this ordinance, but all the rest hereof shall be in full force and effect just as though the section, subsection, sentence, clause, or phrase so declared or adjudged invalid or unconstitutional was not originally a part thereof.

Section 8. Repeal of inconsistent ordinances: All ordinances or parts of ordinances inconsistent or in conflict with the provisions of this ordinance shall be, and the same are hereby, repealed.

Section 9. Public emergency: There being now no sufficient or adequate regulations governing the sale, offer for sale, exhibition for sale, and/or exhibition for the purpose of taking orders for the sale of goods or merchandise by itinerant vendors in the City of Houston; and it appearing that the conduct and operation of such business enables unscrupulous persons to defraud and deceive our citizens under circumstances where our citizens are left without adequate legal remedy; and it further appearing that other evils and abuses exist in connection with such business,—said business of such itinerant vendors is hereby declared to be one affected with a public interest, and the public policy of regulating said business is hereby declared and established.

Section 10. There being a public emergency requiring that this ordinance be passed finally on the date of its introduction, and the mayor having in writing declared the existence of such an emergency and requested such passage, this ordinance shall be passed finally on the date of its introduction, this 4th day of January, 1933, and shall take effect immediately upon its passage and approval by the mayor.

Passed this 4th day of January, 1933.

Approved this 4th day of January, 1933.

It would serve no useful purpose and would unnecessarily lengthen this opinion to set out and discuss the various propositions presented in plaintiff's brief. It is, we think, sufficient to say that each and all of these propositions are based upon appropriate assignments of error and have been duly considered by the court, and none of them should, in our opinion, be sustained.

■ There is no material, if any, conflict in the evidence. The appeal is based upon plaintiff's contention that the ordinance complained of is void upon its face because repugnant to the provisions of our Federal and State Constitutions before mentioned. We cannot agree with this contention. On the contrary, after due consideration of the provisions of the ordinance and the federal and state constitutional provisions cited and relied upon by plaintiff, we think the following counterproposition presented in defendants' brief correctly disposes of this appeal:

"First Counter-Proposition

(Germane to assignments of error Nos. 1, 2, and 3).

"The court did not err in refusing to grant plaintiff's motion for a peremptory instruction and in granting defendants' motion for such instruction in their favor, because it was not shown that the ordinance in question was unduly oppressive to and confiscatory of a lawful innocent business and thus violative of section 19, article 1 of the Constitution of Texas or of the Fourteenth Amendment to the Constitution of the United States."

■ Unless the statute complained of in a proceeding in equity is void on its face and its enforcement would constitute an unlawful invasion of property (or personal) rights of the plaintiff, no relief should be granted the complainant. Ex parte Sterling et al., 122 Tex. 108, 53 S.W.(2d) 294.

■ The right to regulate the occupation of itinerant vendors or peddlers, and to require a license for such occupation, has long been exercised in England and America. One of the leading and best considered opinions upon this subject is that of Justice Gray in the case Emert v. State of Missouri, 156 U.S. 296, 15 S.Ct. 367, 39 L.Ed. 430. It cannot be doubted that the City of Houston has the same right to regulate and license such occupation as is vested in the State, subject only to such limitation as may be enacted by the State Legislature,

and no question is raised involving any such limitations upon the right of appellant city, if the constitutional objections made against the ordinance are not valid. The rule announced in the Emert Case, supra, has been uniformly approved by the highest courts of many of our States. Some of the cases approving the principle announced in the cited case are: State v. Harrington, 68 Vt. 622, 35 A. 515, 520, 34 L.R.A. 100. After setting out the statute involved in that case, which is in all respects similar to the ordinance involved in the present case, the Vermont court closes its opinion with this observation: "We are unable to find that the law in question, as a police regulation, is in contravention of any constitutional provision. We have incidentally considered the authority of the legislature in respect to taxation, but it will be borne in mind that this law imposes a license fee, and not a tax." Another one of the cases which discusses the question at length is State v. Foster, 22 R.I. 163, 46 A. 833, 50 L.R.A. 339. Other States that have taken the same view of the question before are State v. Feingold, 77 Conn. 326, 59 A. 211; Commonwealth v. Crowell, 156 Mass. 215, 30 N.E. 1015.

An examination of the evidence discloses that plaintiff failed to prove that the ordinance is confiscatory or unduly oppressive. The burden was upon plaintiff to introduce evidence sufficient to raise that issue and, having failed to produce such evidence, the trial court properly instructed the jury to find for defendants. The testimony of Mr. Auspaugh, one of the vice presidents of plaintiff company, shows that the company made a net profit of $150, which was 6 per cent. of its investment, on each of its showings of goods for sale in Houston. It cannot be reasonably contended that a license fee of $50 for such showings was unduly oppressive. Upon cross-examination, this witness further admitted that his company's net profit of the business conducted by it in the City of Houston was $765. He failed to see anything confiscatory or unduly oppressive in a license fee of $50 for each of the showings of goods for sale.

That the ordinance involved in the case is not violative of the equal protection and due process clause of the Fourteenth Amendment (U. S. Constitution) is settled by a number of decisions of the United States Supreme Court.

We will close this opinion with the following quotation from defendants' brief:

"The decision of the Supreme Court of the United States in the case of James-Dickinson Farm Co. v. Harry, 273 U.S. 119, 121, 47 S.Ct. 308, 309, 311, 71 L.Ed. 569, 573, is absolutely decisive against plaintiff's contention that the ordinance is void because it does not conceivably cover all itinerant vendors, that is those remaining more than thirty days. In other words, it is plaintiff's view that when a legislative body in the exercise of its police power enacts a law upon a given subject that its enactment will be declared by the courts to be futile and ineffective unless the legislation is all embracing and covers the entire field of possible abuses on the subject. This identical contention was urged in the Dickinson Case. The legislature of this State enacted a statute designed to protect the public from frauds perpetrated by persons selling real estate and stock in corporations or joint stock companies. The heavy burdens and penalties this statute placed upon persons guilty of fraud in selling real estate and stock in corporations were not placed upon persons committing similar frauds in the sale of other property or articles of merchandise. Following its former decisions the Supreme Court of the United States held that such statute did not deny the equal protection of the law as the legislature was not required to cover the entire field of possible abuse, unless it desired to do so. The statute assailed was declared to be a valid enactment under the police power to protect the general public from fraudulent impositions. In upholding the statute the court said:

" 'It is claimed that the Texas statute violates the equal protection clause of the Fourteenth Amendment, because it applies only to fraud in transactions involving the purchase of real estate or of stock in a corporation or joint-stock company. The contention is clearly unfounded. A statute does not violate the equal protection clause merely because it is not all-embracing. * * * A state may direct its legislation against what it deems an existing evil without covering the whole field of possible abuses. * * * The occasion of the legislation is indicated by the urgency provision of the statute which recites "that there are now in this state a number of fraudulent land schemes and that a great number of citizens of this state have been defrauded thereby." ' "

A statute of Louisiana prohibited the sale by itinerant vendors of any drugs, nostrums, ointments or applications of any kind in-

tended for the treatment of disease or injury. It was held in Baccus v. Louisiana, 232 U.S. 334, 34 S.Ct. 439, 440, 58 L.Ed. 627, that said statute did not violate the equal protection or due process of law clauses of the Federal Constitution, although the sale of such articles by other persons is permitted. Chief Justice White, speaking for the court, said: "Did the state have power, without violating the equal protection or due process of law clause of the 14th Amendment to forbid the sale by itinerant vendors of 'any drug, nostrum, ointment, or application of any kind, intended for the treatment of disease or injury,' although allowing the sale of such articles by other persons? That it did have such authority is so clearly the result of a previous ruling of this court (Emert v. Missouri, 156 U.S. 296, 15 S.Ct. 367, 39 L.Ed. 430, 435), or, at all events, is so persuasively made manifest by the authorities cited and the reasoning which sustained the ruling of the court in the case just stated, as to leave no room for controversy on the subject. * * * Moreover, the power which the state government possessed to classify and regulate itinerant vendors or peddlers, exerted in the statute under consideration, is cumulatively sustained and made, if possible, more obviously lawful by the fact that the regulation in question deals with the selling by itinerant vendors or peddlers of drugs or medicinal compounds, —objects plainly within the power of government to regulate."

It seems to us that the contentions of defendants are so sound and so abundantly sustained by the decisions of our highest courts that further discussion of the issues presented by the record is wholly unnecessary, and that the judgment of the trial court must be affirmed.